Lawrence BATTLE, Plaintiff,

v.

Norman Y. MINETA, Secretary of Transportation, Defendant.

No. CIV.A. 01–2213(JR).

United States District Court, District of Columbia.

Sept. 2, 2005.

E. Scott Frison, The Law Firm of E. Scott Frison, Jr., Washington, DC, for Plaintiff.

G. Michael Harvey, Oliver W. McDaniel, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiff sues under the Civil Rights Act of 1964 for racial discrimination and retaliation, the Age Discrimination in Employment Act for age discrimination, and the Rehabilitation Act of 1973 for refusing to accommodate his claimed disability and for terminating his employment. Both parties have moved for summary judgment, and Mr. Battle has moved for sanctions and

civil contempt. For the reasons set forth below, The FAA's motion for summary judgment must be **granted**. Mr. Battle's motions for summary judgment, sanctions, and contempt will be **denied**.

### Background

Mr. Battle began working at the FAA in 1973 as an electronics technician. He was transferred to FAA headquarters in Washington, D.C. in 1990. Between 1992 and 1996, he filed several EEOC complaints claiming racial discrimination. In July 1998 he entered a settlement agreement with the FAA to settle some of his EEO claims.

Mr. Battle claims he suffered a workplace injury on August 4, 1998, upon receipt of a letter from the head of the FAA Office of Civil Rights.[1] He left work the following day after submitting a leave slip that included a request for administrative leave, Def. Ex. 2 ¶¶ 13–15. The requested leave was granted, Def. Ex. 2, Attach. 3 ¶ 12, and Mr. Battle then began to undergo treatment with a therapist who diagnosed him with generalized anxiety disorder "causally related to the work environment." Pl.Ex. 8. According to the therapist, Mr. Battle's condition would not stabilize unless he could return to a "totally different" work environment. Pl.Ex. 9. The therapist sent several letters to the FAA chronicling Mr. Battle's condition and prognosis.[2] On May 20, 1999, Mr. Battle's attorney requested that he be transferred to a different location as a reasonable accommodation of his asserted disability, Def. Ex. 2 ¶ 43, Attach.

15, attaching another letter from the therapist, dated May 19, 1999, which stated that Mr. Battle's anxiety was a conditioned response triggered by being around his supervisors "due to adversarial relationships established during litigation and EEO complaints." Def. Ex. 2, Attach. 16. In a subsequent letter dated June 10, 1999, the attorney restated the request for accommodation as a request that Mr. Battle be moved to a different building. Pl.Ex. 2 ¶ 52.

Much of this letter-writing occurred after Mr. Battle had essentially abandoned his job. His supervisor had directed him to return to work on February 16, 1999. Mr. Battle complied, but two days after his return he requested further leave, which the FAA also granted. Def. Ex. 2 ¶ 31. Mr. Battle never again returned to work, and the FAA terminated his employment on February 20, 2000, citing as its reasons his unavailability to perform the duties of his position and his inability to perform the essential functions of his position. Def. Ex. 2 ¶¶ 66–67.

### Analysis

*Procedural matters*

One of the reasons why the defendant's motion for summary judgment will be granted, but not the only reason, is that Mr. Battle has not complied with rules of procedure that require a party opposing a motion for summary judgment to set forth specific facts showing that there is a genuine issue for trial, and, in this Court, to file a statement of genuine issues of material fact that he asserts are disputed. Fed.

---

[1] Mr. Battle does not describe the specific injury he suffered. Pl. Mot. for Summary Judgment ¶ 5. The FAA Office of Civil Rights sent a letter to Mr. Battle in July 1998 about the settlement of one of Mr. Battle's earlier EEO claims, and about Mr. Battle's "concern about the way the Office was handling his EEO cases." Def. Mot. for Summary Judgment at 2 n. 2.

[2] October 22, 1998, Def. Ex. 2 ¶ 23, Attach. 5a; January 12, 1999, Def. Ex. 2 ¶¶ 25–27; and February 22, 1999, Def. Ex. 2 ¶ 32, Attach. 11.

R.Civ.P. 56(e); LCvR 7(h); *see Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145 (D.C.Cir.1996).

Nor has Mr. Battle complied with the requirements of Rule 56(f). He has moved for contempt and for sanctions under Fed. R.Civ.P. 37, claiming, *inter alia,* that " 'facts essential to justify' the [sic] his case in chief, Fed.R.Civ.P. 56(f), are within the control of the FAA and have not been produced pursuant to lawful and reasonable discovery requests previously filed ...," Pl. Mem. in Support of Civil Contempt and Sanctions Order 6, but he has ignored Rule 56(f)'s requirement of an affidavit setting forth "what facts he intended to discover that would create a triable issue and why he could not produce them in opposition to the motion," *Byrd v. U.S. EPA,* 174 F.3d 239, 248 n. 8 (D.C.Cir. 1999); *see King v. United States Dep't of Justice,* 830 F.2d 210, 232 n. 157 (D.C.Cir. 1987); *Strang v. U.S. Arms Control and Disarmament Agency,* 864 F.2d 859, 861 (D.C.Cir.1989).

*Rehabilitation Act claim*

The Rehabilitation Act forbids discrimination against a "qualified handicapped person" 45 C.F.R. § 84.4(a). A "handicapped person" is one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *Id.* at § 84.3(j)(1). "[M]ajor life activities" are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at § 84.3(j)(2)(ii). A "qualified handicapped person" is one "who, with reasonable accommodation, can perform the essential functions of the job in question." *Id.* at § 84.3(k)(1). Recipients of federal funds must reasonably accommodate "the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Id.* at § 84.12(a).

The *McDonnell Douglas* burden-shifting algorithm developed for Title VII applies equally in Rehabilitation Act cases. *Barth v. Gelb,* 2 F.3d 1180, 1185 (D.C.Cir. 1993) ("courts allocating burdens of proof under the Rehabilitation Act have been prone to adapt and employ the familiar principles of *McDonnell Douglas* as elaborated by *Burdine* ").[3] In order to trigger it, a plaintiff must show 1) that he is handicapped within the meaning of the Act, 2) that he was qualified to perform his duties with or without a reasonable accommodation, 3) that he worked for a program or activity that received federal financial assistance, and 4) that he endured an adverse employment action at the hands of his employer. *Stewart v. Rondeau,* 940 F.Supp. 7, 8 (D.D.C.1996) (citing *Chandler*

---

**3.** "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment." 29 U.S.C. § 794(d). According to the D.C. Circuit, "it would seem reasonable for courts to look to the body of law developed under Title VII for guidance in enforcing comparable rights protected under the Rehabilitation Act," *Barth,* 2 F.3d at 1183. "An alternative, but related, source of authority defining the rights of the handicapped under sections 501 and 504 [of the Rehabilitation Act] are the regulations promulgated, respectively, by the Equal Employment Opportunity Commission ("EEOC") and the Department of Health and Human Services ("HHS")." *Id.* at 1184.

*v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)).

The question presented in this motion is whether Mr. Battle has an impairment that "substantially limits one or more of [his] major life activities." Mr. Battle's allegation is that his general anxiety disorder substantially limits "his ability to interact with people in a positive and productive manner." Pl. Mot. 16.

The D.C. Circuit has yet to decide whether the ability to interact with others is a major life activity like "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). The Ninth and Second Circuits have found "interacting with others" to be a major life activity under the Americans with Disabilities Act.[4] *McAlindin v. County of San Diego,* 192 F.3d 1226 (9th Cir.1999); *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 202 (2d Cir.2004). The First, Fourth, and Tenth Circuits have either suggested the opposite conclusion or declined to decide the question. *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 15 (1st Cir.1997) (suggesting the ability to interact with others is too elastic, subjective, and amorphous to be considered a major life activity); *Rohan v. Networks Presentations, LLC,* 375 F.3d 266, 274 (4th Cir.2004) (declining to address whether interacting with others is a major life activity); *Steele v. Thiokol Corp.,* 241 F.3d 1248, 1254–55 (10th Cir.2001) (same).

There is Circuit precedent for determining what is a "substantial" limit on a major life activity. In *Haynes v. Williams,* 392 F.3d 478 (D.C.Cir.2004), the Court of Appeals held, citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), that a skin irritation that was triggered by appellant's work environment at a single workplace was not permanent or long-term and therefore could not *substantially* limit a major life activity under the Americans with Disabilities Act. The logic of the statutory requirement that the limitation of a major life activity be "substantial" has been criticized.[5] Were it applied in this case, the result would be (paraphrasing *Haynes,* 392 F.3d at 482) that because the impact of Mr. Battle's impairment could be eliminated by assigning him to a different supervisor, the impairment is neither permanent or long term, ergo the limitation is not substantial, ergo Mr. Battle is owed no accommodation and must continue working for the same supervisor, which he cannot do. That would be a very unsatisfactory basis upon which to decide this case.

I find instead that the "ability to interact positively with others" is not a "major life activity." It is, as the First Circuit has held, too undefined, indistinct, and unlike

4. Cases interpreting the protections afforded by the ADA are authoritative precedent for Rehabilitation Act cases, because the ADA provides "at least as much protection as provided by the regulations implementing the Rehabilitation Act." *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). *See also* 29 U.S.C. § 794(d).

5. In *Accommodating Vulnerabilities to Environmental Tobacco Smoke: A Prism for Understanding the ADA,* 12 JOURNAL OF LAW AND HEALTH 1 (1998), the authors discuss this very problem, namely, that "individuals

with asthma or other impairments who have only claimed that their impairment limits their ability to work in one particular workplace (and do not allege that they experience a substantial limitation of another major life activity, such as walking or breathing) are unlikely to be found to have a disability." *Id.* at 14. According to the authors, it is this kind of logic that allows employers to deny reasonable accommodations, for example, to employees who experience respiratory reactions to second-hand smoke.

the sort of activities that have been held by other courts to be major life activities. *Soileau,* 105 F.3d at 15. "Work" is a major life activity, *see* 45 C.F.R. § 84.3(j)(2)(ii), but Mr. Battle cannot successfully claim that his anxiety disorder substantially limits his ability to work, because

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.... To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.

*Duncan,* 240 F.3d at 1114 (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491–92, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)); *see Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) ("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job."). Mr. Battle's claim is that his disorder prevents him from working with a discrete group of former supervisors. The number of positions that fit this description do not constitute "a broad class of jobs."

### Title VII race discrimination claim

Mr. Battle has not made out a prima facie case of race discrimination. He is African–American, and he did suffer an adverse employment action when he was terminated, but the facts do not give rise to an inference of discrimination. *See Teneyck v. Omni Shoreham Hotel,* 365 F.3d 1139, 1150 (D.C.Cir.2004); *George v. Leavitt,* 407 F.3d 405, 412 (D.C.Cir.2005).

Mr. Battle has argued that "forty-four (44) FAA non-minority employees similarly situated with a disability as Mr. Battle were accommodated by the FAA," Pl. Mem. 25.[6] Since, as I have found, Mr. Battle is not a handicapped person, he cannot successfully claim to be similarly situated with persons who are, and the fact that the FAA refused his request for reasonable accommodation raises no inference of discrimination. *See Holbrook v. Reno,* 196 F.3d 255, 261–2 (D.C.Cir.1999) (plaintiff, a probationary trainee, does not raise inference of discrimination by comparing employer's treatment of her to that of a veteran employee with supervisory responsibility because they are not similarly situated).[7]

---

**6.** Mr. Battle initially requested that the FAA produce the personnel and medical records of these 44 employees. The FAA objected on grounds of burdensomeness, and Mr. Battle narrowed his request to four named employees. The FAA could find records for two of the four and stated that it did not have enough information about the other two. The personnel files, if they do indeed exist, would have been stored at the National Archive Record Administration located in St. Louis, Missouri. The defendant made what the Court considers to be good-faith efforts to locate the personnel files of Ms. Chase and Mr. Bradford, even obtaining the Court's assistance by having the Court place a telephone call to Mr. Bill Terry, the head of the records center.

**7.** Mr. Battle asserts that, despite the entry of a protective order in this case, he was provided only with sanitized versions of the two personnel files that the FAA did locate. The record is somewhat murky on this point. Mr. Battle does not clearly state what is missing from the files that might assist him to make his case. He may be arguing that the "unsanitized" files would reveal that he *was* similarly situated to non-minority employees who were accommodated because they could not "interact positively with others." If that is indeed his point, and if there is a colorable basis in this record for making it, the Court will entertain a motion for reconsideration of Mr. Battle's race discrimination claim.

*Title VII retaliation claim*

██ To state a prima facie case of retaliation under Title VII, the plaintiff must show 1) that he engaged in protected EEOC activity, 2) that he suffered an adverse employment action, and 3) that these actions are causally connected. *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C.Cir.2002). A plaintiff may establish a causal connection by showing that his employer knew of his protected activity and took adverse action against him soon thereafter. *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985).

 It is undisputed that Mr. Battle engaged in protected activity by filing several EEOC complaints between 1992 and 1996 and that his termination in February 2002 was an adverse employment action. More than five years elapsed between his protected activity and his termination (about three years between his protected activities and FAA's alleged refusal to accommodate his anxiety disorder); however, those time periods are too long to give rise to an inference of discrimination. *See Clark County Sch. Distr. v. Breeden,* 532 U.S. 268, 273–4, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (20 month time lapse suggests no causality at all in retaliation case); *Holbrook v. Reno,* 196 F.3d 255, 263 (D.C.Cir.1999). He has also failed to provide any evidence to show that the defendant's nonretaliatory explanation for terminating him—namely, Mr. Battle's 17-month absence from work—was pretextual.[8] *See Waterhouse v. D.C.,* 298 F.3d 989, 994 (D.C.Cir.2002) (affirming summary judgment where evidence was insufficient for reasonable juror to reject employer's nondiscriminatory explanation for employment decision); *Plotkin v. Shalala,* 88 F.Supp.2d 1, 4 (D.D.C.2000).[9]

*Title VII age discrimination claim*

Mr. Battle's complaint that he was discriminated against on the basis of age appears to have been abandoned.

*Motion for sanctions*

██ A district court may impose sanctions for violations of discovery orders pursuant to Federal Rule 37(b)(2), or by the exercise of its inherent power to " 'prevent abuses of the judicial process.' " *Butera v. District of Columbia,* 235 F.3d 637, 661 (D.C.Cir.2001) (quoting *Shepherd v. Am. Broad. Co.,* 62 F.3d 1469, 1474 (D.C.Cir. 1995)).

██ The motion for sanctions will be denied. I find that the FAA did make a good-faith effort to obtain the requested personnel files from the national archive in St. Louis, Missouri, and that the plaintiff has put forth insufficient evidence to the contrary. *See* Decl. of Candide Cavanagh. The plaintiff subpoenaed the four requested personnel files, but only two were located, and the archivists were unable to retrieve the remaining two files without the employees' social security numbers. *Id.* at ¶¶ 1–3.

An appropriate order accompanies this memorandum.

## ORDER

For the reasons set forth in the accompanying memorandum, the motion of defendant Secretary of Transportation for

---

8. The plaintiff's absence from work began on August 5, 1998, and his termination became effective on February 20, 2000. Def. Ex. 5. He was absent throughout this period, except for a brief return to FAA headquarters for two days in February 1999.

9. "[W]hen the defendant denies its actions were motivated by the plaintiff's disability, the plaintiff may employ the *McDonnell Douglas* burden-shifting framework to bring her Rehabilitation Act claim before a jury." *McGill v. Munoz,* 203 F.3d 843, 845 (D.C.Cir.2000).

summary judgment [49] is **granted.** Plaintiff's motions for summary judgment [51] and for sanctions [56] are **denied.**